# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **LITTLE LADNER** | § | **PLAINTIFF** |
| | § | |
| v. | § | Civil Action No. 1:11cv437-HSO-RHW |
| | § | |
| **WOODLAND VILLAGE** | § | |
| **NURSING CENTER** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER COMES BEFORE THE COURT on a Motion for Summary Judgment [16] filed by Defendant Woodland Village Nursing Center on September 18, 2012.  Plaintiff Little Ladner, proceeding *pro se*, filed a Response [19] and an Amended Response [20] in opposition to the Motion.  On January 23, 2013, the Court directed the parties to file supplemental briefing on any defamation claim, and Defendant filed a Supplemental Memorandum [24].  Plaintiff's current counsel subsequently entered a Notice of Appearance [25], and with permission of the Court [35], filed a Supplemental Response [36] to Defendant's Motion for Summary Judgment.  Defendant has filed a Supplemental Reply [37].  After due consideration of the record, the submissions on file, and relevant legal authorities, the Court finds that Defendant's Motion for Summary Judgment [16] should be granted in part and denied in part.

I. <u>PROCEDURAL HISTORY</u>

This dispute arises from Plaintiff Little Ladner's former employment at Woodland Village Nursing Center ["Woodland Village" or "Defendant"]. Plaintiff filed her *pro se* Complaint [1] in this Court on November 17, 2011, naming Woodland Village as the sole Defendant. On December 8, 2011, Plaintiff filed an Amended Complaint [4]. Liberally construing her *pro se* pleadings, Plaintiff asserts claims against Woodland Village for retaliation and hostile work environment based upon her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and for defamation under Mississippi state law. Woodland Village has moved for summary judgment on Plaintiff's claims.

II. <u>DISCUSSION</u>

A. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is

appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

B. <u>Plaintiff's Claims</u>

 1. <u>Hostile Work Environment Claim</u>

Plaintiff contends that during her employment at Woodland Village, she was subjected to a sex-based hostile work environment. Specifically, Plaintiff alleges that:

> [t]here were many instances of inappropriate behavior experienced while employed for the Defendant. On a number of occasions, the Supervisor would call sex chat lines and talk right over Plaintiff's should [sic] while charting. The Supervisor once called the Plaintiff a "stupid bitch." The bathrooms at the facility require a key to open, while the Plaintiff would be inside, the Supervisor would unlock the door and come in with another coworker. In front of several coworkers, the Supervisor pulled down the Plaintiff's pants and underwear. One time, the Plaintiff's car had large underwear taped to it. Another instance of the harassment, the Supervisor squirted cream into a glove like it was his penis ejaculating and rubbed it on the Plaintiff's arm. One time, the Supervisor told the Plaintiff that there was an emergency phone call regarding the Plaintiff's children when it was actually a funeral director needing directions to the facility. Other occasions, the Supervisor would tell the Plaintiff they were going to act like the Plaintiff stole medicine from the medicine cart and would take the Plaintiff's narcotics keys from the pocket of the Plaintiff's pants. The Supervisor also informed the Plaintiff that if the Plaintiff reported the Supervisor that nothing would happen because the Supervisor had previous sexual relations with the Director of Nursing, the head of the Human Resources department.

Pl.'s Am. Compl. [4], at p. 2.

Woodland Village contends that Plaintiff is unable to establish a *prima facie* case of a hostile work environment. Def.'s Mem. in Supp. of its Mot. for Summ. J.

[17], at pp. 4–5.  It also argues that it exercised reasonable care, and that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities Woodland Village provided.  *Id.* at pp. 5–7.  Plaintiff maintains that genuine disputes of material fact preclude summary judgment on this claim.  Supplemental Resp. [36], at p. 2.

To establish that she was subjected to a hostile work environment by coworkers in violation of Title VII, a plaintiff must show that:  (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted).  Woodland Village maintains that Plaintiff is unable to demonstrate the last four of these five elements.  Def.'s Mem. in Supp. of its Mot. for Summ. J. [17], at pp. 4–5.  However, where, as here, the alleged harasser is a supervisor, the fifth element is not required.  *LeMaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 393 n.2 (5th Cir. 2007) (citation omitted).  Because Plaintiff alleges that her harasser was a supervisor, and because there is no dispute that she is a member of a protected group, the inquiry turns on elements two, three, and four.

Woodland Village asserts that Plaintiff cannot show that she was subjected to any unwelcome sexual harassment as required by the second element.  "[T]he documents attached to [Plaintiff's] Response to the discovery requests show that she

laughed at the incidents she complained of in her Complaint and that she refused to file any charges against those co-workers who perpetrated pranks on her." Def.'s Mem. in Supp. of its Mot. for Summ. J. [17], at p. 4.  Plaintiff has included with her Response the statement of a coworker who expressed that she "always thought the pranks went way too far, but Ms. Ladner just went along with it, saying that was OK."  EEOC Statement of Karen Fleming [19-4], at p. 1, attached as Ex. "4" to Pl.'s Resp. [19].  Ms. Fleming further stated that "I think that may have been her way of coping with the pranks."  *Id.*  Construing the record evidence in the light most favorable to Plaintiff, the Court finds that there is a genuine question of material fact as to whether the alleged harassment occurred, and if so, whether it was unwelcome.

As to the third element, Woodland Village maintains that not all of the pranks were "of a sexual nature," such that it is "unclear whether the pranks were based on her protected status."  Def.'s Mem. in Supp. of its Mot. for Summ. J. [17], at p. 4.  The lack of clarity in the record on this point suggests to the Court the presence of a factual issue.  Much of the conduct that Plaintiff alleges her supervisor engaged in could be construed to be of a sexual nature.  Am. Compl. [4], at p. 2.  Viewing the evidence in the light most favorable to Plaintiff, the Court finds that genuine disputes of material fact exist on this element.

Woodland Village next contends that Plaintiff has failed to produce any evidence as to the fourth element, that the harassment affected any "term, condition or privilege of employment." Def.'s Mem. in Supp. of its Mot. for Summ. J.

[17], at p. 4.  "The phrase 'terms, conditions, or privileges of employment' includes requiring people to work in a discriminatorily hostile or abusive environment." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 440 (5th Cir. 2011) (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993)).  This does not require "economic" or "tangible" discrimination, *Harris*, 510 U.S. at 21, and thus does not require a tangible employment action, *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 162 (5th Cir. 2007).  "For conduct to be actionable, it needs to be sufficiently 'severe or pervasive.'"  *Dediol*, 655 F.3d at 440  (citing *Harvill v. Westward Comms., LLC*, 433 F.3d 428, 434–35 (5th Cir. 2005)).

To determine whether conduct is severe or pervasive, the Court must "look to the totality of the circumstances."  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (citing *Lauderdale*, 512 F.3d at 163 (5th Cir. 2007)).  Factors relevant to this inquiry include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (quoting *Harvill*, 433 F.3d at 434).  The conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Id.* (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).  Having reviewed the pleadings on file, the evidence submitted, and the record as a whole in this case, genuine issues of material fact exist as to this element, including whether the conduct alleged was sufficiently severe or pervasive,

and whether it was objectively and subjectively offensive.

Woodland Village further maintains that it exercised reasonable care, and that Plaintiff failed to take advantage of any preventive or corrective opportunities it afforded her. Def.'s Mem. in Supp. of its Mot. for Summ. J. [17], at pp. 5–7; *see* Def.'s Answer [7], at p. 3. Essentially, Woodland Village has asserted an *Ellerth/Faragher* affirmative defense to vicarious liability. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998). To successfully raise this affirmative defense, an employer must show, absent a tangible employment action, that: (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment; and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm or otherwise. *Casiano v. AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000). An employer can satisfy the first prong of this test by implementing institutional policies and education programs regarding sexual harassment. *See, e.g, Lauderdale*, 512 F.3d at 164; *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 413 (5th Cir. 2002).

To support its argument, Woodland Village relies upon its Conduct and Behavior Policy,[1] which includes an employee grievance procedure. Conduct and Behavior Policy [19-10], at p. 2, attached as Ex. "10-B" to Pl.'s Resp. [19]. Woodland Village also posits that there is "no evidence that Plaintiff ever informed her employer of any harassment, sexual or otherwise." Def.'s Mem. in Supp. of its Mot.

---

[1]Defendant did not supply a copy of this policy, but Plaintiff attached it to her original Response [19]. Conduct and Behavior Policy [19-10], at pp. 2–3, attached as Ex. "10-B" to

for Summ. J. [17], at p. 6.[2]  With respect to conflicts between employees, the

Conduct and Behavior Policy provides, as follows:

> Department directors/supervisors should assist employees in settling conflicts.  When conflicts cannot be settled, a grievance should be filed in accordance with our grievance procedures as set forth in the policies entitled "Grievances" and "Grievance Procedures" which are included in this chapter.[3]

Conduct and Behavior Policy [19-10], at p. 2, attached as Ex. "10-B" to Pl.'s Resp. [19].

While it references a general employee conflicts provision, Woodland Village has provided no evidence of a standing policy or of training it has conducted on sexual harassment, or on any type of harassment.  Nor has Woodland Village cited any authority to support its contention that the employee conflicts provision would be considered legally sufficient in this regard.  It is unclear from the record currently before the Court whether the policy or policies upon which Woodland Village relies, and the manner in which they were implemented, are adequate to satisfy the first prong of the *Ellerth/Faragher* affirmative defense to vicarious liability.  *See Wyatt*, 297 F.3d at 413.  Reviewing the evidence submitted and the record as a whole in the light most favorable to Plaintiff, the Court is unable to conclude that Woodland Village has carried its initial summary judgment burden of demonstrating that it exercised reasonable care to prevent and correct promptly any

---

Pl.'s Resp. [19].
[2]Defendant makes various factual allegations in this portion of its Memorandum Brief [17] about how Ms. Stephanie Griffith became aware of an "incident involving Ms. Ladner" and of Plaintiff "being teased," but Defendant provides no citations to the record, nor does it supply any documents to support these statements.  Def.'s Mem. in Supp. of its Mot. for Summ. J. [17], at p. 6.
[3]Neither of the policies entitled "Grievances" or "Grievance Procedures" are included in the record.

sexual harassment.  *See Casiano*, 213 F.3d at 283–84.

For the foregoing reasons, summary judgment would be inappropriate on Plaintiff's hostile work environment claim.  Woodland Village's Motion will be denied in part as to this claim.

2. Retaliation

Plaintiff contends that she was subjected to retaliatory discharge.  She asserts that after the "instances of harassment, Plaintiff requested to move to another unit in the facility.  Upon reporting to the Director of Nursing, the Plaintiff was informed that the Plaintiff was no longer employed with the Defendant."  Am. Compl. [4], at p. 2.  Woodland Village argues that Plaintiff has not established a *prima facie* case of retaliation under Title VII.  Def.'s Mem. in Supp. of its Mot. for Summ. J. [17], at pp. 7–8.  Plaintiff responds that she "was forced out of her job when she complained about the sexual harassment."  Supplemental Resp. [36], at p. 3.

To establish a *prima facie* case of retaliation, Plaintiff must show that:  (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between the protected activity and the adverse employment action.  *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (citation omitted).  "An adverse employment action is one that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Hernandez v. Yellow Transp.*,

*Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (quoting *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008)).

While it is not entirely clear from her pleadings, the Amended Complaint [4], Response [19], Amended Response [20], and Supplemental Response [36], taken collectively, appear to allege that when Plaintiff complained to the Director of Nursing, whom she maintains was also the head of the Human Resources Department, "Plaintiff was informed that [she] was no longer employed with the Defendant." Am. Compl. [4], at p. 2. She does not reveal when this conversation occurred. According to the evidence Plaintiff herself has supplied, the Director of Nursing, Ms. Stephanie Griffith, stated that Plaintiff called in to work sick on August 12, 13, 17, and 18, 2009. Mem. from Stephanie Griffith [19-9], at p. 1, attached as Ex. "9-B" to Pl.'s Resp. [19]; EEOC Statement of Stephanie Griffith [19-9], at p. 3, attached as Ex. "9-C" to Pl.'s Resp. [19]. Then, on August 19, 2009, Plaintiff called Ms. Griffith to inform her that she was "resigning immediately." Mem. from Stephanie Griffith [19-9], at p. 1, attached as Ex. "9-B" to Pl.'s Resp. [19].

Plaintiff has not presented any competent summary judgment evidence which demonstrates that, assuming she engaged in an activity protected by Title VII, an adverse employment action subsequently occurred or that a causal connection existed between a protected activity and an adverse employment action.[4]

---

[4]Plaintiff alleges, for the first time in her Supplemental Response [36], that she was "*constructively discharged* when the harassment, including pulling down Plaintiffs [sic] pants and taping panties to her car, became so intolerable that she could no longer go to

-10-

Fifth Circuit case law is clear that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey*, 286 F.3d at 269 (quotation omitted). Viewing the evidence presented in the light most favorable to Plaintiff, she has not established a *prima facie* case of retaliation. *See Banks*, 320 F.3d at 575.

    3. <u>Defamation</u>

The Court found that Plaintiff's *pro se* Amended Complaint [4] could potentially be liberally construed to assert a defamation claim. Order [21], at p. 1; *see also* Am. Compl. [4], at p. 2 ("The Defendant submitted false information to the unemployment office against the Plaintiff on two different occasions."). The Court directed the parties to submit supplemental briefing to address the propriety of summary judgment on Plaintiff's defamation claim. *Id.* at p. 2.

Defendant maintains that any defamation claim is barred by the applicable statute of limitations. Supplemental Memo. [23], at pp. 4–5. It argues in the alternative that it is entitled to qualified privilege which Plaintiff has not overcome. *Id.* at pp. 6–7. Finally, Defendant contends that Plaintiff has not satisfied the

---

work." Supplemental Resp. [36], at p. 3 (emphasis added). Plaintiff made no such allegation in her Complaint [1] or Amended Complaint [4]. Therefore, this claim is not properly before the Court. Nor does the record evidence before the Court support an argument that she was retaliated against to the point that she was "constructively discharged." In addition to the fact that there is no evidence that any of the alleged harassment occurred *after* she reported the conduct or otherwise engaged in any activity protected by Title VII, Plaintiff has not alleged that she was forced to resign or quit because of any harassment. As the Fifth Circuit has explained, "constructive discharge is not itself a cause of action. It is a means of proving the element of an adverse employment action where the employee quits instead of being fired." *Wells v. City of Alexandria*, No. 03-30750, 2004 WL 909735, *3 (5th Cir. 2004). Here, Plaintiff does not allege that she resigned, but that "[u]pon reporting to the Director of Nursing, the Plaintiff was informed that the Plaintiff was no longer employed with the Defendant." Am. Compl. [4], at p. 2. Plaintiff's allegations indicate that these instances occurred before she reported the harassment to the

elements of a defamation claim under Mississippi state law because she has failed to present proof of any element of this claim. *Id.* at pp. 8–9.

In her Supplemental Response [36], Plaintiff identifies the alleged misstatement by Defendant. She states that, when she "filed for unemployment benefits Defendant at the very least, misrepresented to the Mississippi Department of Employment Security the amount of wages she had earned in order to defeat her claim for unemployment benefits due to her termination." Supplemental Resp. [36], at p. 4. Plaintiff maintains that Defendant is not entitled to qualified privilege. *Id.* at p. 5.

Mississippi Code § 15-1-35 provides a one-year statute of limitations for claims of libel. Plaintiff does not indicate when the alleged misrepresentation regarding her wages to the Mississippi Department of Employment Security ["MDES"] occurred. Because summary judgment is nevertheless appropriate on a defamation claim, the Court need not resolve whether this claim is barred by the statute of limitations.

To prove defamation under Mississippi law, Plaintiff must establish the existence of

(a) a false statement that has the capacity to injure the plaintiff's reputation;
(b) an unprivileged publication, *i.e.*, communication to a third party;
(c) negligence or greater fault on part of publisher; and
(d) either actionability of statement irrespective of special harm or existence of special harm caused by publication.

---

Director of Nursing. *See, e.g., id.* Hence, Plaintiff is unable to establish "retaliation" on this basis.

*Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001) (quotation omitted).

Mississippi Code § 71-5-131 provides that

> [a]ll letters, reports, communications, or any other matters, either oral or written, from the employer or employee to each other or to the department or any of its agents, representatives or employees, which shall have been written, sent, delivered or made in connection with the requirements and administration of this chapter shall be absolutely privileged and shall not be made the subject matter or basis of any suit for slander or libel in any court of the State of Mississippi *unless the same be false in fact and maliciously written, sent, delivered or made for the purpose of causing a denial of benefits under this chapter.*

Miss. Code § 71-5-131 (emphasis added).

Plaintiff alleges that a statement by Defendant to the MDES regarding the amount of wages she had earned was false. Supplemental Resp. [36], at p. 4. The Court has not been supplied with the content of any records communicated to the MDES, nor with any evidence reflecting the actual wages Plaintiff earned while she was employed with Defendant. Therefore, Plaintiff has not presented any competent summary judgment evidence demonstrating that any such statement to MDES was false in fact. *See Speed*, 787 So. 2d at 631; *see also* Miss. Code § 71-5-131.

Plaintiff has also not adduced competent summary judgment evidence that any alleged misstatement was "maliciously written, sent, delivered or made for the purpose of causing a denial of benefits . . . ." Miss. Code § 71-5-131. Rather, Plaintiff states that "the misrepresentation of her actual wages received is negligence at best." Supplemental Resp. [36], at p. 5. Negligence is insufficient to

overcome the privilege afforded by Mississippi Code § 71-5-131.  Defendant is entitled to judgment as a matter of law on Plaintiff's defamation claim.  *See* FED. R. CIV. P. 56(a); *see also McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603, 608 (Miss. 1993) (on a motion for a directed verdict, without evidence that statements to MDES were false or maliciously made, employer's statements to MDES that it terminated plaintiff for a "bad attitude" and for being insubordinate maintained their privileged status afforded by Miss. Code § 71-5-131, and could not be the basis for a libel or slander suit).

### III. CONCLUSION

For the foregoing reasons, the Court concludes that summary judgment in Woodland Village's favor is appropriate on Plaintiff's claims for retaliation under Title VII and for defamation.  Summary judgment will be denied as to Plaintiff's hostile work environment claim.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, the Motion for Summary Judgment [16] filed by Defendant Woodland Village Nursing Center on September 18, 2012, is **GRANTED IN PART**, as to Plaintiff's claims for retaliation under Title VII and for defamation, and **DENIED IN PART**, as to Plaintiff's claim for hostile work environment under Title VII.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Little Ladner's claims against Defendant Woodland Village Nursing Center for retaliation under Title VII and for defamation are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 30th day of April, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE